COOPER (KEENE v.). See Case No. 7,641.

## Case No. 3,198.
### COOPER v. LABER.
[1 Biss. 539.][1]

Circuit Court, N. D. Illinois. Oct. Term, 1866.[2]

SECURITIES GIVEN TO RAILROADS TO AID IN CONSTRUCTION—BONA FIDE HOLDERS MAY ENFORCE—COLLATERAL AGREEMENT—PRESENTATIONS—INFORMAL INDORSEMENT CURED—MAKER MUST RESPOND TO INNOCENT HOLDER.

1. A note given to a railroad company as subscription for stock, may be enforced by a bona fide holder, notwithstanding existing agreements or equities between defendant and the company.

2. An agreement made by the company at the time of the giving of the note, and as a part of the same transaction, that it would save defendant harmless on his subscription, does not constitute a valid defense unless the plaintiff can be charged with notice.

3. The fact that the plaintiff knew for what the note and an accompanying mortgage were given, makes no difference; nor do any false or fraudulent representations made to induce defendant to execute the note, unless notice of them is brought home to the plaintiff.

4. The plaintiff having received the note and mortgage attached to, and as collateral security for a bond of the company, containing a clause that the note and mortgage were assigned and transferred "in connection with the bond and not otherwise," but without any written indorsement, any informality in such transfer is cured by the written indorsement of the note made before maturity by the president with the knowledge and consent of the board of directors.

5. The rule of law that the defendant having executed the note and enabled the company to raise money on it, must respond to an innocent holder, is well established and founded on the plainest principles of justice and equity.

[See note at end of case.]

This was an action by [Tunis Cooper] the indorsee of a promissory note given by the defendant [Jacob Laber] on the 6th day of May, 1856, for the sum of thirty-seven hundred dollars, to the Racine and Mississippi Railroad Company, and payable with ten per cent. interest, at the office of the company, in Racine, Wisconsin, on the 10th day of May, 1861.

Lewis Umlauf, for plaintiff.
Knowlton & De Wolf, for defendant.

DRUMMOND, District Judge, charged the jury as follows:

It is necessary that you should understand clearly the circumstances under which this note was given. By acts of the legislatures of Wisconsin and of Illinois, certain corporations were authorized to construct a railroad from Racine, partly through Wisconsin and partly through Illinois to the Mississippi river at Savannah, and to consolidate those roads with each other, so as to make one continuous line of road. Articles of association were entered into to accomplish that purpose. After this was done, the company sought to raise money by obtaining subscriptions to the stock of the road from different parties along the line, and took from them notes similar in character to the one that is in evidence here, and to secure their payment mortgages were given on real estate. Accordingly, to secure the payment of this note, the defendant executed a mortgage on his farm. At the time this note and mortgage were given, the Racine and Mississippi Railroad Company entered into an agreement with the defendant to the effect that, in consideration that the defendant assigned to the company his right to any dividends that he might be entitled to on his stock, the company would save him harmless from the payment of interest and from any loss whatever for his subscription to the stock. On the 29th day of May, 1856, the railroad company executed a bond, with coupons attached, and in June of that year this bond, together with the note and mortgage, were assigned to the plaintiff, he paying the amount of the note. The bond recited that the company was indebted to the bearer in the sum of thirty-seven hundred dollars, payable at their office, in the city of New York, on the 10th of May, 1861, with interest from and after the 10th of May, 1856, at the rate of ten per cent., payable semi-annually, and that as security for the same it assigned and transferred to the holder of the bond the note and mortgage of the defendant. The note unindorsed, the mortgage and bond, were fastened together and delivered to the plaintiff's son and agent, Fletcher Cooper, at the time the money was paid. There is evidence tending to show that certain representations were made at the time by parties who procured the note and mortgage from the defendant, and which it is said caused him to execute them, and there has been also a good deal of evidence introduced, the object of which, on the part of the defendant, is to show that these representations were untrue, and therefore it is claimed the defendant was not bound to pay the note and mortgage. The only remark the court desires to make in relation to that is this: It is necessary for you to distinguish between statements made by way of expressing an opinion or a simple recommendation, and those made by the parties with a view of inducing the defendant to execute the note. A mere expression of opinion, or a recommendation in relation to certain things should, of course, be regarded merely as the judgment of the party. A statement of the facts which the defendant would not be presumed to know, and had not the means of knowing, with a view of inducing him to execute the note, would be different.

The court will leave it to you to determine whether there were representations made as facts to the defendant, with a view to induce him to execute the note and mortgage, which

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]
[2] [Affirmed in Laber v. Cooper, 7 Wall. (74 U. S.) 565.]

were false. If you should find that these statements were made, and were untrue, the next question would be whether they would affect the plaintiff.

It was in June, 1856, that the note and mortgage were transferred to the plaintiff. You have to take the state of facts as they existed at that time, in order to ascertain the bona fide character of the assignment; whatever might occur afterwards could not affect the plaintiff. It is made a question how far the facts at the time bound the plaintiff. There can be no doubt, from the evidence in the case, that the plaintiff knew for what the note and mortgage were given; that they were given as a subscription for so many shares of the capital stock of the company. The main question is, whether the plaintiff knew of the existence of the representations alleged to be made, at the time, or prior to the execution of the note, and also knew that they were untrue. Is there evidence in the case that tends to show that the plaintiff or his son, Fletcher Cooper, at the time the bond, note, and mortgage were taken, knew, or had reason to know, that there were any false or fraudulent representations made to the defendant to induce him to execute them? If there is not any such evidence in the case, then, according to the view which the court takes, the plaintiff would be as to that a bona fide holder of the note and mortgage, and would not be bound by any equities which might exist between the railroad company and the defendant.

The defendant's counsel has contended that the note and mortgage were invalid, for the reason that the articles of consolidation were void; that there was in reality no foundation in law for the note and mortgage to rest upon; and some authorities have been cited on this point. I have not had as much time as I would desire to consider this question. The main ground upon which he puts it, as I understand, is, that those articles of association between the different corporations were not under seal, and therefore the union of the roads in the two states was illegal. So far as I am at present advised, I am inclined to think, considering the manner in which this question arises, so far as the authority was concerned on the part of the railroad company to receive this note and mortgage, we must treat them as a valid note and mortgage.

I have spoken of the alleged misrepresentations that were made at the time, and of the necessity of the plaintiff or his agent knowing that these misrepresentations were made, before that part of the defense can be made out. I will now particularly call your attention to the fact that at the time the note and mortgage were given, the railroad company entered into a written agreement with the defendant. There is no doubt that the note and mortgage, and the agreement, were all one transaction. The question is, was the plaintiff, at the time of

the transfer to him, aware of that agreement? Did he know the nature and contents of that contract? If he did, then he was bound by it, not otherwise. You will see that the agreement, by its terms, seems to contemplate that the note and mortgage were to be transferred, because in the case of transfer the company guarantees the defendant against loss. The view that I take of it is that, unless the plaintiff or his son, as agent, knew of the existence of this agreement made by the company, he is not bound by it.

The only remaining question is whether there was an indorsement or assignment of the note to the plaintiff. The evidence shows that the Racine and Mississippi Railroad Company appointed agents to negotiate the loan of these notes and mortgages, and by virtue of the authority so given, as I understand, this and similar bonds were executed by the company, which were secured collaterally, as in this case, by notes and mortgages. As I have stated, the note was not indorsed by the company. By the terms of the bond, they transferred and assigned the note; but there is a clause in the bond that declares that the note and mortgage were assigned and transferred in connection with the bond—"in connection with the bond, and not otherwise." So that I think it is quite clear that it was the intention of the company that the bond, the note, and the mortgage, should all go together, forming one security to the holder or bearer. They were all attached together, and transferred at the same time to the plaintiff.

There may be a question whether this was not legally a good indorsement of the note by the payees, the Racine and Mississippi Railroad Company. It is true the indorsement was not written on the back of the note, but it was written upon a paper which was attached to it, and which it was intended should become a part of it. However that may be, there was a written indorsement afterward, and years before its maturity, made upon the note by the president of the company to the plaintiff. Some question has been made whether this indorsement was authorized. You have heard the testimony of Mr. Durand, the president, on that subject. There is no doubt that it was the intention of the company to transfer whatever right of property it had in the note to the plaintiff, at the time that the money was received and the negotiations consummated. Therefore, the written indorsement upon the note, which was subsequently made, was only carrying out the intention of the parties at the time. He says that it was the subject of conversation in the board of directors; that indorsements were made by him from time to time in the presence and with the knowledge of the board; and he gives the reason why. It was supposed that under the law of Illinois a written indorsement of a note was necessary. It was

thought, he says, by the board, that no additional authority was necessary in order to enable him to make the indorsement, and it was made accordingly. If you believe this, then I think there is no doubt that there was a valid technical indorsement made on the note, because if his statement is true, it was done with the knowledge and consent of the board of directors, and in fact it would have been a breach of faith for the board of directors to withhold the indorsement from the note, if that were necessary, because they had transferred the note for which they had received value in cash, and it was right that they should give to the plaintiff all the power and control over the note which they themselves had.

You will perceive, therefore, that according to the view which the court takes in this case, the plaintiff was a bona fide holder of the note, and can recover, if he did not know that there were any false or fraudulent representations made at the time, or previous to its execution, and which caused its execution, and if he did not know of the existence of the contract or agreement given by the railroad company at the time that it was executed, and if he paid value for it. The reason of this is apparent. It is said to be a hard case for the defendant, as the stock has become worthless, that he should pay his money for nothing. That may be true, but the question is, who should suffer a loss in a case like this? Admitting that he has been imposed upon, and as between the original parties themselves he ought not to pay it, still if he or the plaintiff has to suffer, the rule is that by executing the note and enabling the company to put it in circulation and raise money on it, the defendant must suffer the loss, for if he had never executed the note, or caused it to be put in circulation, the plaintiff never would have advanced his money on it. That is the reason of the rule of law on the subject, and it is founded, it seems to me, on the plainest principles of justice and equity.

Therefore you will see that the case turns, so far as you are concerned, upon this, viz: whether there is any evidence in the case which shows that the plaintiff knew that there were misrepresentations made (if there were misrepresentations of the character that I have stated) and whether the plaintiff knew of the existence of the agreement that was made at the time by the railroad. If he did not, and if there was no fact brought to his knowledge which would cause a prudent man to make inquiry, then I think that the plaintiff is entitled to recover. If, however, he knew of the existence of any fraud —if he knew of this contract and its terms— then he is not a bona fide purchaser without notice, but he takes the note and mortgage subject to the equities which exist between the parties, and the defendant would not be liable. The other questions raised by the defendant I shall reserve for future

consideration, if it becomes necessary. If you shall find for the plaintiff, of course he is entitled to recover the amount of the note with interest from the last payment, which was the 10th day of May, 1857.

Verdict for plaintiff.

[NOTE. Defendant moved for a new trial. The motion was overruled, and judgment entered upon the verdict.

[From statement of case by Mr. Justice Swayne in the supreme court, see post.]

NOTE [from original report]. This case was carried by writ of error to the supreme court and the judgment below affirmed, the position and reasoning of Judge Drummond being adopted as the views of the supreme court. [Laber v. Cooper] 7 Wall. [74 U. S.] 565. A bona fide holder of bonds may enforce them, independent of any equities between the original parties. Morris Canal & Banking Co. v. Fisher, 1 Stock. [9 N. J. Eq.] 667; Finnegan v. Lee, 18 How. Pr. 186; Bank of Rome v. Village of Rome, 19 N. Y. 20. To the same effect, see State of Illinois v. Delafield, 8 Paige, 527; on appeal, 2 Hill, 159; Mechanics' Bank v. New York & N. H. R. Co., 3 Kern. [13 N. Y.] 625; cited and approved in Bank of Rome v. Village of Rome, 19 N. Y. 20. That fraudulent representations, made at the time of subscription do not constitute a good defense, see opinion of Hopkins. J., in Upton v. Hansbrough [Case No. 16,801] Feb. 1873, to appear in subsequent volume of these reports.

[NOTE. In addition to the adoption of the views expressed by the circuit court, the supreme court further held, as to the additional grounds assigned as error, that an irregularity consisting in a failure to reply to a plea was cured by the trial and verdict; moreover, the objection could not be raised for the first time in the supreme court; and, furthermore, section 32 of the judiciary act forbids a judgment to be reversed for any want of form in the proceedings except such as shall have been specially pointed out by demurrer. Also, that an objection that the verdict was not responsive to the issues submitted was too late for the like reasons, and that an exception to the overruling of an objection to certain testimony could not be considered, because not distinctly taken and placed upon the record. Laber v. Cooper, 7 Wall. (74 U. S.) 565.]